WALLANCE J. CARNES, JR., a minor by his next friend, Francis McVey, Plaintiffs, Appellants, v. FRANCIS L. WINSLOW, a minor by his guardian *ad litem*, James A. Walsh, Esquire, Defendants, Appellees, v. FRANCIS L. WINSLOW, *et al.*, Plaintiffs, Appellees, GEORGE K. EACHUS, *et al.*, Defendants, Appellants.

---

(*May* 22, 1962.)

SOUTHERLAND, Chief Justice, and WOLCOTT, Justice, and MARVEL, Vice Chancellor, sitting.

*James P. D'Angelo* and *Victor F. Battaglia* for Appellant Wallace J. Carnes, Jr.

*F. Alton Tybout* (of Prickett, Prickett and Tybout) for George K. Eachus, *et al.*, appellants.

*Ernest S. Wilson, Jr.*, for Francis L. Winslow, appellee.

Supreme Court of the State of Delaware, No. 64, 1961.

SOUTHERLAND, C. J.:

These are suits growing out of a motor vehicle collision involving two cars. Plaintiff Carnes, a passenger in the car driven by Eachus, brought suit against Winslow, the driver of the other car. Winslow in turn brought suit against Eachus. After hearing the evidence, the trial judge directed a verdict in favor of Winslow on the ground that his negligence, if any, was not the proximate cause of the accident. This holding entailed a judgment in favor of Winslow as defendant in Carnes' suit, and a judgment in favor of Winslow as plaintiff in his suit against Eachus. Carnes and Eachus appeal. They contend

that the issue of Winslow's negligence should have been left to the jury.

The facts are these:

The collision occurred at about 9:45 on Sunday morning, January 17, 1960 at the intersection of Chestnut Hill Road and Kingston Road in New Castle County, at a point about a mile east of Newark and near a settlement called Brookside.

Chestnut Hill Road is a two-lane road for two-way traffic, running generally east and west. Kingston Road is a four-lane road for two-way traffic, running generally north and south. Chestnut Hill Road, although narrower, is a well-traveled road. One of the places to which it leads is the plant of the Chrysler Corporation. Kingston Road runs through the Brookside settlement. Accordingly, traffic at the intersection is controlled by a traffic light which is so operated as to make the Chestnut Hill the favored highway. In addition, there is a stop sign against northbound traffic on Kingston Road. On this Sunday morning the light was blinking yellow to a driver approaching the intersection on the Chestnut Hill Road, and was blinking red to a driver on the Kingston Road. The roads are relatively straight and the lights are visible to approaching drivers for considerable distances.

Winslow was driving a passenger car west on Chestnut Hill Road to the Chrysler plant, where his employer had an office, and hence was approaching the intersection from the east. Eachus was driving a delivery truck north on Kingston Road, and hence was approaching the intersection from the south. Carnes was in the car counting newspapers. Eachus and Carnes were engaged in delivering papers on a newspaper route.

The intersection is an open and unobstructed one.

The photographs in evidence show that each driver had ample opportunity to observe the approach of the other to

the crossing. Their testimony indicates that they entered the intersection about the same time. Neither driver saw the other vehicle until they were both entering the intersection. Winslow did not slacken his speed until he saw Eachus' truck. Eachus says he reduced his speed approaching the intersection to 5 or 10 miles an hour, but did not stop for the red light. Winslow says Eachus' speed was twenty to thirty miles an hour. Winslow's car struck the Eachus truck broadside. The point of impact appears to be the door of the Eachus truck. Carnes was injured.

It is clear from these facts that both drivers violated the rules of the road. Eachus (1) drove through a red light and (2) did not look to his right as he approached the crossing. Winslow did not "proceed through the intersection * * * with caution", as required by 21 *Del. C.* § 4142(c), in that, without looking to his left for cars approaching from the south, he proceeded with undiminished speed into the intersection.

The trial judge ruled that Winslow, even if he had looked and seen Eachus approaching the intersection, had the right to assume that Eachus would stop at the stop sign; and that no danger existed until Eachus went by the stop sign, when it was too late for Winslow to avoid the accident. In effect, the court held Eachus' negligence to be the proximate cause of the collision, and that Winslow's negligence was not, as a matter of law, a contributing cause. The court relied on our recent decision in *Williams v. Chittick*, 51 *Del.* 122, 139 *A.* 2d 375, involving a favored driver approaching an intersection on an arterial highway. We shall discuss that decision hereafter.

In reviewing the lower court's ruling, we must determine whether, under any view of the evidence, a jury might reasonably find that Winslow's negligence contributed to the accident. It may be conceded at once that one possible conclusion as to the cause of the accident is that of the trial judge. Thus, a jury might perhaps conclude that Eachus, hav-

ing slackened his speed in approaching the intersection, suddenly increased it and drove recklessly in front of Winslow's oncoming car. On the other hand, we think a jury might find that Eachus approached the crossing at a high speed, and that if Winslow had kept a proper lookout he might well have realized, a few seconds before entering the crossing, that Eachus might not stop, in which case he would have instinctively checked his speed, and might have avoided the accident. See the language of the court in the *Marvil Package* case hereinafter quoted. Indeed, in the light of the unobstructed view of the crossing afforded to each driver, it seems to us that the concurrent negligence of both is quite probable. At all events a jury, we think, might reasonably so find.

It is well settled that the presence of signals at a crossing does not relieve an automobile driver from the duty of keeping a proper look out. In *Spence v. Waters*, 39 *Del.* 582, 4 *A.* 2d 142, our Superior Court quoted with approval the language of the Supreme Court of Pennsylvania in *Byrne v. Schultz Incorporated*, 306 *Pa.* 427, 160 *A.* 125, 127, in which the court said:

"The signal to cross is not a 'command to go, but a qualified permission,' and the qualification is 'to proceed lawfully and carefully,' as a prudent man would under the circumstances, which certainly requires looking to the right and left before entering upon the intersecting street. To hold otherwise, and as contended by defendants, would be to relieve drivers from vigilance and careful driving at street intersections, and license them to drive blindly where traffic is most dangerous."

We think that this is a correct statement of the law. Winslow was not entitled to rely blindly, as he did, on the red light and stop sign on the Kingston Road. Especially is this so, because the yellow blinker imposed caution. It is said that the statute is declaratory of the common law duty to exercise *care because one* synonym of "caution" is "care".

This construction of the statute would render it superfluous. On the contrary, we think that the legislature intended to impose upon a driver approaching an intersection regulated by a yellow blinker a duty to proceed more warily than he would ordinarily proceed, and, if circumstances indicate, to slacken speed. This question is discussed in *State for Use and Benefit of Hopkins v. Marvil Package Co.*, 202 *Md.* 592, 98 *A.* 2d 94, 97. The Court of Appeals said:

"When the State has erected an amber signal to regulate traffic on a through highway, we think it not unreasonable to find its purpose is to exact from the users of a highway a caution higher than is to be expected in the absence of such a signal. So to hold does not diminish or render ineffectual the utility of the modern through highway. Nor does it mean that a user of the highway cannot assume that drivers will stop in compliance with stop signs. It means merely that one should not proceed through such an intersection oblivious to it. It does mean, as the statute plainly says, that an amber light is a warning to proceed cautiously, and if the facts show that an accident has occurred due to a failure to take heed of such an admonition, when a collision could have been averted by exercising caution, then liability may be imposed upon the user of the favored artery. While the driver on the main artery may ordinarily rely on the vehicle approaching from his right or left stopping as required by the red light, yet if the circumstances indicate that the approaching vehicle will not stop, then a duty arises on the part of the favored driver to avoid an accident if he can. He cannot proceed in complete disregard of obvious danger." 98 *A.* 2d 97-98.

Obviously, a driver who does not look cannot determine whether the circumstances indicate that the approaching vehicle will not stop. This is one of the important distinctions between this case and the *Chittick* case, relied on by Winslow and by the court below. In that case the collision occurred at an intersection of an arterial highway (Route 13) and a cross-

road with a "stop" sign against traffic approaching on the crossroad. It was dusk and the evidence was that the lights on the car on the crossroad were not turned on. There was no yellow blinker. In considering the provisions of § 4125(b) concerning "appropriate reduced speed" at intersections, we said:

"Unless the driver on the through highway has some warning of danger likely to occur at such intersection, the words 'appropriate reduced speed' have no significance here."

In this case there was warning of danger.

Moreover, we added:

"This does not mean that he does not have to keep such lookout as a reasonable prudent person would do in order to discover possible danger."

And we recognized that a driver on a favored highway might under some circumstances be guilty of negligence contributing to an accident.

We reaffirm the holding of the *Chittick* case, but we think it inapplicable here.

We conclude that the question of proximate cause should have been submitted to the jury.

It follows that the judgments in favor of Winslow must be reversed and the cause remanded for further proceedings.