Lester R. BULLOCK, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 277, 1999.

Supreme Court of Delaware.

Submitted: Nov. 28, 2000.
Decided: June 27, 2001.

Raymond M. Radulski and James D. Nutter [argued], Office of the Public Defender, Wilmington, for appellant.

Kim Ayvazian, Department of Justice, Georgetown, for Appellee.

Before VEASEY, C.J. , WALSH, HOLLAND, BERGER and STEELE, JJ.

STEELE, Justice for the Majority:

On October 22, 1998, a jury convicted Lester B. Bullock of manslaughter arising from a collision between Jennifer Alleger's car and Bullock's truck at the intersection of Rt. 40 and Pleasant Valley Road. The

State charged Bullock with manslaughter for recklessly causing the death of Alleger "by driving at an excessive speed while impaired by alcohol which resulted in a collision with another car."[1] At trial, at the conclusion of the State's case, Bullock moved for a judgment of acquittal and argued that the State's evidence showed that Alleger's disregard of a red light as he entered the intersection on a yellow light primarily caused the collision that resulted in her death. The Superior Court denied the motion. The jury, following the Court's instructions, convicted Bullock of manslaughter and the Court sentenced him to five years at Level V, suspended after one year for declining levels of probation. Bullock filed a timely notice of appeal.

On appeal, Bullock argues that no reasonable juror could conclude that he proximately caused the accident because Alleger became the sole proximate cause of the accident when she disregarded a red light and drove her car into his path after his truck had entered the intersection controlled by a yellow light. Bullock also argues that the Superior Court erred by giving the jury an "unavoidable accident" instruction instead of an "accident" instruction and by failing to instruct the jury properly on reckless causation in accordance with 11 *Del. C.* § 263.[2] We conclude: (1) that the failure to instruct the jury in accordance with Section 263 deprived Bullock of an instruction that contained an essential principle of law necessary to decide the factual issue presented to them; and (2) that the Superior Court erred in giving an "unavoidable accident" instruction that was not supported by the facts of the case and that undermined the jury's ability to intelligently perform its duty. Accordingly, we **REVERSE** the judgment of the Superior Court and **REMAND** this case for a new trial.

## I

On December 8, 1997 at approximately 6:25 p.m., Bullock drove his pick-up truck westward on Route 40 in New Castle County. As he approached the intersection of Route 40 and Pleasant Valley Road, the traffic control signal in front of him at the intersection turned yellow. At the same time, Alleger waited in a turn lane on eastbound Route 40, facing a solid red arrow, preparing to cross the westbound lanes of Route 40 and turn north onto Pleasant Valley Road. Bullock increased his speed through the intersection. As he drove through the intersection, Alleger entered the intersection against the red signal and collided with Bullock's truck.

Delaware State Police Trooper Raymond Shatley responded to the accident. He found Alleger's car on Route 40 approximately 100 feet west of the intersection. He found Bullock's truck on Route 40 farther west of the intersection than Alleger's car. Shatley determined that Alleger was dead at the scene.

Shatley questioned Bullock. He detected an odor of alcohol on Bullock and no-

---

1. Appx. to Appellant's Op. Br. at A–4.

2. Section 263 states in pertinent part: Reckless or negligent causation; different result from that expected or overlooked:

The element of reckless or negligent causation is not established if the actual result is outside the risk of which the defendant is aware or, in the case of negligence, of which the defendant should be aware unless:

(1) The actual result differs from the probable result only in the respect that a different person or different property is injured or affected or that the probable injury or harm would have been more serious or more extensive than that caused; or

(2) The actual result involves the same kind of injury or harm as the probable result and is not too remote or accidental in its occurrence to have a bearing on the actor's liability or on the gravity of the offense.

ticed that Bullock's eyes were glassy. Bullock told Shatley that he had consumed three beers earlier that afternoon. Although Bullock passed several field sobriety tests including a portable breathalyzer test, his performance on other tests led Shatley to believe that Bullock was impaired by alcohol. Bullock slurred the letters of the alphabet beyond recognition and failed the one-leg-stand and finger-to-nose tests. Shatley also administered the horizontal gaze nystagmus and the walk-and-turn. The results of these tests supported Shatley's suspicion that Bullock was impaired by alcohol.

Paramedics transported Bullock to the Christiana Emergency Room to draw a blood sample to determine his blood-alcohol level. Approximately two hours after the accident, Bullock's blood-alcohol level registered .079 grams per deciliter, a reading below the legal level for intoxication. Shatley did not cite Bullock for driving under the influence of alcohol. The State, however, arrested Bullock for criminally negligent homicide and then sought an indictment for manslaughter.[3]

Delaware State Police Officer Philip Strohm, Jr., an accident reconstruction expert, arrived at the accident scene approximately one hour after the accident. Strohm testified that Bullock faced a yellow light when he proceeded through the intersection and that Alleger faced a solid red arrow. He opined that Alleger at-tempted to cross Route 40 onto Pleasant Valley Road. Strohm determined that Bullock clearly had the right of way at the time of the accident. Strohm determined that only 300 feet separated the two vehicles when Alleger initially pulled out onto Route 40 and that Bullock spanned this distance in three seconds. According to Strohm, a normal person can perceive and react to a danger in 1½ seconds. At fifty-five mph, a driver would travel 120 feet before perceiving and reacting to a danger and would travel another 260 feet before the car could come to a complete stop. He determined that at the point of impact, Alleger was travelling slightly above 11 mph while Bullock was traveling approximately 77 mph. Markings on the road indicated that Bullock steered right in an attempt to avoid the collision. Strohm concluded that, while Bullock's speed and consumption of alcohol may have contributed to the accident, "the primary contributing circumstance of the collision was Ms. Alleger passing a red light."[4]

## II

 The primary issue in this case is whether the Superior Court properly instructed the jury on reckless causation. A secondary issue is whether the Superior Court erred when it instructed the jury on "unavoidable accident." Bullock's counsel, however, did not object to the unavoidable accident instruction given or proffer an instruction based upon Section 263. Therefore, we review for plain error.

---

**3.** See 11 Del C. § 632. An arrest warrant issued on February 27, 1998, charged Bullock with criminally negligent homicide, a class E felony. A grand jury indicted Bullock on March 30, 1998 for manslaughter, a class C felony. The State then entered a nolle prose-qui on the criminally negligent homicide charge. Interestingly, 11 Del. C. § 630A, Delaware's vehicular homicide statute, a class E felony, applies to a person who drives criminally negligently under the influence of alcohol as defined by 11 Del. C. § 4177 and who thereby causes the death of another. Ironically the State's inability to prove driving under the influence resulted in an indictment and conviction for a more serious crime. This process allowed the State to use alcohol consumption on an "impairment" theory to support the mens rea of reckless conduct without the burden of proving driving under the influence.

**4.** Appx. to Appellant's Op. Br. at A–34.

Plain error exists when the error was "so clearly prejudicial to [a defendant's] substantial rights as to jeopardize the very fairness and integrity of the trial process."[5]

 "The primary purpose of jury instructions is to define with substantial particularity the factual issues and clearly to instruct the jury as to the principles of law [that] they are to apply in deciding the factual issues presented in the case before them."[6] "A trial court must give instructions to a jury as required by evidence and law whether the parties request the instruction or not."[7] Indeed, "[t]he trial judge is charged with the responsibility for instructing the jury. This is not controlled by the parties as their function and duty is to bring to the court's attention the instructions they consider applicable and the reasons why they should be given."[8] "As a general rule, a defendant is not entitled to a particular instruction, but he does have the unqualified right to a correct statement of the substance of the law."[9] And "[w]hile 'some inaccuracies and inaptness in statement are to be expected in any charge,' this Court will reverse if the alleged deficiency in the jury instructions 'undermined . . . the jury's ability to intelligently perform its duty in returning a verdict.'"[10]

At trial, the Superior Court instructed the jury that:

> The indictment charges . . . that Lester Bullock . . . did recklessly cause the death of Jennifer Alleger by driving at an excessive speed while impaired by alcohol and which resulted in a collision with another car.

Delaware defines the offense of manslaughter in pertinent part as follows: A person is guilty of manslaughter when he recklessly causes the death of another person. In order to find the defendant guilty of manslaughter, you must find that each of the following elements have been established beyond a reasonable doubt: One, the defendant caused the death of Jennifer Alleger.

By this I mean the defendant must have brought about this death which would not have occurred but for such act. And two, the defendant acted recklessly.

A person acts recklessly with respect to death when he is aware of and consciously disregards a substantial and unjustifiable risk that death will result from his conduct. The risk must be of such a nature and degree that the person's disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

You must find that the person was aware of and consciously disregarded the risk that his conduct would cause death and also that the risk was so great that a reasonable person under the circumstances would have acted otherwise to avoid the risk.

And three, the defendant was driving at an excessive speed while impaired by alcohol which resulted in a collision with another car.[11]

---

5. See *Dutton v. State*, Del.Supr., 452 A.2d 127, 146 (1982).

6. See *Zimmerman v. State*, Del.Supr., 565 A.2d 887, 890 (1989).

7. *Zimmerman*, at 891 (citing *United States v. Cooper*, 10th Cir., 812 F.2d 1283, 1286 (1987)).

8. *Cooper*, at 1286.

9. *Flamer v. State*, Del.Supr., 490 A.2d 104, 128 (1983) (citations omitted).

10. *Id.* (citations omitted).

11. Appx. to Appellee's Answering Br. at B–22.

Bullock argues that while this instruction includes the definition of causation found in 11 *Del. C.* § 261,[12] the instruction is incomplete because the trial court should have instructed the jury that "reckless causation is not established if the actual result [Alleger's death] is outside the risk of which [Bullock] was aware [Alleger illegally disregarding a red arrow] . . ." and that a failure to include this instruction constituted plain error.

Bullock argues that under Delaware law, when recklessness is an element of the crime, the State must prove that the defendant was a proximate cause of an injury. Bullock argues that no reasonable juror could conclude that he proximately caused the collision because Alleger's negligence was an intervening and superseding cause of the collision. Therefore according to Bullock, Alleger became the sole proximate cause of the accident when she disregarded a red arrow, entered the intersection and collided with Bullock's truck. To support his argument that he cannot be a proximate cause of the collision Bullock notes that the State's expert, by concluding that Alleger was the primary cause of the collision, in effect, concluded that Alleger, not Bullock, was the proximate cause of the accident.

The State argues that the Superior Court properly instructed the jury because "the jury was fully instructed on the elements of manslaughter."[13] The State argues that Bullock acted recklessly because he was speeding and impaired by alcohol. The State reasons that "but for" his speed and "impairment" his truck would not have collided with Alleger's car and she would not have died. Because Bullock should have foreseen that a collision with Alleger could have resulted from his speeding

while impaired by alcohol, the State argues, Bullock should be criminally liable for the consequences of his actions. The State argues that it proved that Bullock was aware of and consciously disregarded the risk that his conduct would cause death and that a reasonable person would have acted otherwise, and that "but for" his conduct, the death would not have occurred. The State maintains that the Superior Court's instruction contained all the elements required or at least charged the jury sufficiently so that it could intelligently perform its duty.

The State further argues that Bullock misstates the issue by arguing that Alleger was a superseding cause of the accident, maintaining that Bullock confuses civil law concepts of causation with the Model Penal Code's analytical framework for imposition of criminal liability. The State argues that "[t]here is no question that Bullock caused [Alleger's] death by colliding with her car. The issue at trial was not whether Alleger was negligent but whether Bullock should be held criminally liable for his reckless conduct. Since there was more than legally sufficient evidence that Bullock's conduct in driving at an excessive speed while impaired by alcohol was reckless, the trial court did not err in denying his motion for judgment of acquittal."[14] There is, however, a distinction between the Superior Court's assessment of a motion for a judgment of acquittal and its formulation of an instruction to the jury that clearly instructs the jury on statutory principles of law that apply to the facts of a case.

■ It is correct that the revised Delaware Criminal Code, enacted in 1973, eliminated the doctrine of proximate cause from Delaware criminal law and replaced

**12.** Section 261 states: "Conduct is the cause of a result when it is an antecedent but for which the result in question would not have occurred."

**13.** Appellee's Op. Br. at 21.

**14.** Appellee's Op. Br. at 8–9.

it with 11 *Del. C.* §§ 261—264, a statutory scheme defining the circumstances under which causation may be established for offenses where causing a particular result is an element.[15] This Court, however, has not interpreted Section 263, which discusses circumstances under which reckless or negligent causation may *not* be *established.* Thus, this is a case of first impression.[16] The issue here is whether, without an instruction containing the language contained in Section 263, the jury would understand that on these facts that they could conclude that the element of reckless causation required for a conviction of manslaughter "is not established if the actual result is outside the risk of which the defendant is aware ..." and the actual result is not too remote to have a bearing on Bullock's liability. Could they know, under the instruction as given, that Bullock could act recklessly as the State described yet not be criminally responsible for the collision and death? Did the jury understand that they were to assess the probability that he would be aware that another driver might disregard a red signal and collide with his truck and that they could conclude that that fact was improbable or too remote and therefore outside the risk of which he was aware?

■ In criminal prosecutions, the State need only show a "but-for" relationship between an action and a result to establish causation.[17] This "but-for" causation, however, is subject to limitation when the charged conduct is reckless or negligent instead of intentional. Section 263, the State agrees, modifies the strict application of the "but-for" causation test where the actual and probable results of conduct are different. In this case, the State argues that there was no difference in the actual and probable results—an automobile collision causing a death—of Bullock driving at an excessive speed while impaired by alcohol. Thus, the State argues that despite Bullock's contention that Alleger's actions were a superseding cause of the collision, Alleger's negligence, in fact, is not at issue: "While [Alleger's] contributory negligence may bar a civil action against the person [ (Bullock) ] whose acts cause the death, it does not relieve the latter from criminal responsibility for having caused the death."[18] Implicit in the State's argument, of course, is the position that the charge given on causation was

---

**15.** *See* Delaware Criminal Code with Commentary, § 261 (1973).

**16.** Our research reveals only one case in which a Delaware court gave a Section 263 instruction. In *State v. Witherspoon*, Del.Super., No. 9610003447, 1999 WL 744429, Silverman, J. (July 30, 1999) *aff'd, Witherspoon v. State*, Del.Supr., No. 460, 2001 WL 138499, 1999 Steele, J. (Feb. 14, 2001), the State charged the defendant, Witherspoon, with second-degree murder after inciting a gun battle in which an innocent bystander was killed by another shooter. In *Witherspoon*, the State conceded that the defendant had not fired the fatal shot; however, the evidence showed that the defendant began the gun battle in a crowded area and repeatedly fired his gun into the air. The Superior Court instructed the jury on reckless/negligent causation and provided an instruction including

the language of Section 263. The defendant was found guilty after the jury had explained to them that they should consider whether the defendant was aware of, and *intended,* the likely outcome that someone would be shot and killed.

**17.** Delaware modeled §§ 261–264 after the Model Penal Code and Commentaries, Part I, § 2.03, which the State relies upon. The Model Penal Code describes "the minimum requirement for a finding of causation" as "conduct causing a particular result."

**18.** Appellee's Op. Br. at 11 (citing 40 Am. Jur.2d, *Homicide* § 107 at 574 (1999)). It seems counter intuitive that Alleger's negligence would bar her from recovery against Bullock in a civil action yet he can be subjected to a conviction for manslaughter in a criminal prosecution.

sufficient. The problem we have with that contention is twofold: (1) it overly simplifies fact situations that involve multiple actors who contributed to the result and ignores the purpose of Section 263; and, (2) it focuses solely upon the defendant's role and minimizes the importance of his awareness of the risk of his actions and his individual ability to avoid the risk before imposing criminal liability. The State puts the issue far too facilely. Alleger's conduct must be, as a matter of fact, incorporated into the instruction in order to allow the jury to assess intelligently its bearing upon the defendant's awareness that death could result from his presence in the intersection on a yellow light and at the speed that he traveled. They must assess, as well, the remoteness or the probability that at that very same instant Alleger would disregard a red signal and put her vehicle in his path. Put more plainly, were these odds so great that this chain of events would occur that the jury could conclude that the events had "a bearing on [Bullock's] liability or on the gravity of the offense?" Nowhere does the instruction, unlike the language of Section 263 contemplates, speak to the need to weigh his actual awareness of the risk against the improbable actions of another actor, which unarguably contributed to the result.

▮▮ Section 263, contrary to the State's argument, was designed for difficult cases such as this one where a defendant contends that the actual result of his conduct is outside the risk of which he is aware. According to the commentary to the Model Penal Code, on which the Delaware Criminal Code is based, the comparison of actual and probable results must take the specific facts into account.[19] Here the instructions given decidedly did not.

Accordingly, the actual result should not be defined generally, as "death by collision" but more specifically, as a death which resulted in part from Alleger disregarding a red light and by entering the intersection illegally (where Bullock had the right to be) and crossing Bullock's lane of travel as well as from Bullock's actions.

Bullock concedes that he acted recklessly when he drove through the intersection at a speed nearly thirty miles per hour over the speed limit. He argues, however, that the actual result in this case of Alleger dying from a collision after Alleger disregarded a red light, differs from the probable result of Bullock speeding through an intersection on a yellow light. Bullock argues that because he had the right of way facing a yellow light, he had no duty to anticipate nor could he foresee that Alleger would fail to remain stopped at the red light. A jury could conclude, if properly charged, that the State had not established the element of reckless causation if the collision that resulted from Alleger disregarding the red light was outside the risk of which the defendant was aware and so improbable that it would occur that it would not be expected.

The State cites *Storey v. Castner*[20] for the proposition that there is a higher standard of care and diligence required of a motorist entering an intersection regulated by what the State chooses to characterize as a "cautionary signal."

In *Storey,* this Court held that "in the absence of circumstances which put a reasonable man on notice of impending danger, a driver on a dual highway with a green light in his favor has the right to assume that he could traverse the intersection safely and that cross traffic would

---

**19.** *See* Commentary at 260 n. 13. ("The term 'actual result' is meant to be contrasted with the ... probable result in terms of its specific character and manner of occurrence.").

**20.** Del.Supr., 314 A.2d 187 (1973).

stop in obedience to the red light."[21] The *Storey* Court continued, stating that "This Court has heretofore recognized that a higher standard of care and diligence is required of favored motorists who enter an uncontrolled intersection,[22] or who enter an intersection regulated by a cautionary signal.[23] In such cases, a motorist is under a duty to proceed more warily."[24]

The State concedes that Bullock had the right of way but argues that when the "light had turned yellow [Bullock] had notice of impending danger."[25] The State cites *Storey* for the proposition that when the light turned yellow Bullock had a "higher standard of care and diligence [that is] required when entering an intersection regulated by a cautionary signal."[26] Thus, the State argues that when the light at an intersection controlled by a traffic control signal turns from green to yellow, a motorist is placed under a higher standard of care to be aware of impending danger.

The State, however, misstates the holding of *Storey*. Delaware's motor vehicle code distinguishes intersections regulated by traffic control signals, not by the color of the light at any given moment, but by whether the lights are solid or flashing.[27] In *Storey*, this Court stated that a motorist entering an intersection regulated by a cautionary signal has a higher standard of care and diligence, citing *Carnes v. Winslow*.[28] A cautionary signal, however, as made clear in *Storey*, does not mean a solid yellow light. It means an intersection regulated by a flashing red light or a flashing yellow light.[29] Indeed, 21 *Del. C.* § 4110(a)(2) states that "When a yellow or green lens is illuminated with intermittent flashes, drivers of vehicles may proceed through the intersection or pass such signals only with caution." There is no such condition of caution placed on an intersection controlled by a solid yellow light.[30]

The *Storey* Court focused on the time in which the favored motorist was put on notice of impending danger: "The crucial point here is not so much the speed of the [favored motorist's] vehicle but, instead, the time when [the favored motorist] was put on notice of the impending danger."[31] The Court concluded that "[t]he speed of the [favored motorist's] car is then significant for the limited purpose of determining whether plaintiff had sufficient time, considering speed and distance, to take reasonable steps to avert the accident."[32] In this case, the State's own expert testified that only 300 feet separated the two vehicles when Alleger initially pulled out onto Route 40 and that Bullock spanned this distance in three seconds. According to Strohm, a normal person can perceive and react to a danger in 1½ seconds. At fifty-

21. *Id.* at 191 (citing *Nolan v. Sullivan,* 3rd Cir., 372 F.2d 776, 780 (1967)).

22. *Id.* (citing *Wootten v. Kiger,* Del.Supr., 226 A.2d 238 (1967)).

23. *Id.* (citing *Carnes v. Winslow,* Del.Super., 182 A.2d 19, 21 (1962)).

24. *Id.*

25. Appellee's Op. Br. at 13 (citing *Storey,* at 191).

26. *Storey,* at 191.

27. *See* Title 21 *Del. C.* § 4108 and § 4110.

28. *See supra* n. 23.

29. *See Carnes,* 54 Del. at 540, 182 A.2d at 21 (stating that the favored driver was not "entitled to rely blindly ... on the red light" especially "because the yellow blinker imposed caution").

30. *See* 21 *Del. C.* § 4108(a)(2)a. stating "Vehicular traffic facing the circular yellow signal is thereby warned that a red signal for the previously permitted movement will be exhibited immediately thereafter."

31. *Storey,* at 190.

32. *Id.*

five mph, a driver would travel 120 feet before perceiving and reacting to a danger and would travel another 260 feet before the car could come to a complete stop. Based on the State's own expert, Bullock would not have been able to stop in time to avoid colliding with Alleger even if he had been traveling within the speed limit. While the State points out that Bullock was looking in his rearview mirror just before he entered the intersection, there is no nexus between that alleged fact and anything Bullock could have done to increase his awareness that Alleger would disregard the red light or to avoid the collision.

 *Storey* does not impose a higher standard of care on Bullock when he entered the intersection on a solid yellow light than if he entered on a solid green light. Under these conditions, there is neither a greater nor a lesser risk that another motorist will disregard a red light and enter the intersection. Bullock had no duty to be aware of an increased risk that someone would disregard a red light just because he entered the intersection on a yellow light. He had no duty to anticipate Alleger's negligence nor to be aware or conscious of it as those terms are meant for the purpose of criminal liability. Because Bullock had no duty to anticipate Alleger's negligence, no reason to foresee it, and no time to avoid the consequences of it, a question arose whether, despite Bullock's speed and alleged impairment, the State had established the element of reckless causation and could thus hold Bullock criminally liable for Alleger's death. An instruction that did not include the language of Section 263 failed to provide the jury with the proper framework in which to assess whether under the facts in

this case reckless causation *had not been established.* The trial court's duty included, regardless of what trial counsel requested or submitted, the obligation to supply the jury with a correct statement of the law in accordance with the facts of this case.

In sum, the Superior Court committed plain error by not including Section 263 in the jury instruction. Had the jury received an instruction based on Section 263, they may have concluded that despite Bullock's actions, that he could not be found to have recklessly caused Alleger's death because the result of her actions could not be expected and were outside the risk "of which [he] was aware." Without that instruction the jury was denied the opportunity to analyze the facts fully in this case and accurately apply the law.

### III

 Bullock argues that the Superior Court erred by giving the jury an "unavoidable accident" instruction instead of an "accident" instruction. At the prayer conference held to discuss proposed jury instructions, the Superior Court proposed to the parties an "accident" instruction that defined "accident" as a "sudden and unexpected event occurring without intention, due to carelessness, unawareness, ignorance, or a combination of these, which produces an unfortunate result. It is an unforeseen unplanned fortuitous event."[33] Bullock agreed to this instruction. The State, however, requested that if the Superior Court intended to provide an "accident" instruction, then it should be an "unavoidable accident" instruction. Bullock's counsel did not object to the "unavoidable accident" instruction, which court ultimately provided the jury.[34] In

---

33. Appx. to Appellant's Op. Br. at A–38.

34. The court instructed the jury on unavoidable accident that:

The mere fact that a death or injury occurred does not mean that the defendant was reckless or criminally negligent in his conduct. The law recognizes that there

fact, during the prayer conference, Bullock's counsel, referring to the State's proposed instruction stated, "It's got more instructions that are more attractive than the Court's [instruction]." [35]

Bullock now argues that it was plain error for the Superior Court to give the jury an "unavoidable accident" instruction. The State argues that Bullock's acceptance of the instruction precludes any argument that the instruction was erroneous.

During closing argument, the prosecutor argued that unavoidable accident was inapplicable in this case because the accident, in fact, could have been avoided if Bullock had not been speeding. That is, Bullock could have avoided the accident if he had not sped through the intersection of Route 40 and Pleasant Valley Road while impaired by alcohol. As the State's own expert opined, however, even if Bullock had not been speeding he would have been unable to avoid the collision as a result of Alleger disregarding the red arrow. In fact the accident could have been avoided if Alleger had remained stopped at the red signal as she was legally charged to do. Bullock argues that the "unavoidable accident" instruction incorrectly placed a higher standard of care on him because an unavoidable accident is "one which could not have been avoided through the exercise of proper care. If the defendant exercised the care and skill which the law require, then in truth the accident is unavoidable and the defendant is not guilty." [36] Bullock argues that the "acci-

dent" instruction should have been given because it "correctly recognized that even if [Bullock] had not been acting as a reasonable person, the accidental circumstances of the collision could negate either or both the culpable state of mind and the voluntariness of the act." [37]

In this case, based on the facts of the accident as reconstructed by the State's own expert, there can be no intelligent basis for an "unavoidable accident" theory. The instruction distorted the focus of the case away from the two drivers' negligent and reckless actions, respectively. It inappropriately suggested that a collision in which two drivers actively participated carelessly and recklessly, respectively, could somehow have been avoided instead of focusing the jury's attention on the extent to which the result of their respective conduct could be so readily foreseeable that it would warrant criminal liability.

■ One cannot doubt that a jury would find Bullock guilty based on the unavoidable accident instruction given. The State's argument that Bullock's acceptance of the unavoidable accident instruction obviates any argument that the instruction was incorrect is unpersuasive. Implicit in every jury instruction is the fundamental principle that the instruction applies to the specific facts in that particular case and contains an accurate statement of the law. Simply because the parties in a case agree on a particular set of instructions, does not excuse the trial judge's duty to give proper instructions.

---

may be an unavoidable accident for which no person is criminally responsible. Such an accident is one which could not have been avoided through the exercise of proper care. If the defendant exercised the care and skill which the law require, then in truth the accident is unavoidable and the defendant is not guilty. However, the fact that you may find that the defendant failed to exercise the care and skill required does not mean the defendant is guilty unless you

believe beyond a reasonable doubt that the defendant acted in a reckless or criminally negligent manner. Appx. to Appellant's Op. Br. at A–39.

**35.** Appx. to Appellee's Op. Br. at 20.

**36.** *See supra* n. 35.

**37.** Appellant's Op. Br. at 21 (citing *Hall v. State*, Del. Supr., 431 A.2d 1258 (1981)).

Contrary to the State's argument, an improper jury instruction may amount to plain error despite a defendant's acceptance of it.[38] The deficiency of this instruction is so glaring that it clearly deprived the jury of a chance to intelligently perform its duty and, thus, amounted to plain error.

## CONCLUSION

The failure to give an instruction based upon Section 263 undermined the jury's ability to assess whether, given Bullock's actions, reckless causation was nonetheless not established and to conclude that he should not be held criminally liable because he was unaware of the risk that Alleger would disregard a red arrow and collide with his truck while he was properly in the intersection. Without that instruction, the jury lacked the proper framework in which to analyze the facts in this case. The jury could well have found that Bullock had been speeding, been impaired and entered the intersection on a yellow signal but nevertheless was not aware of the probability that or should not be charged with anticipating that Alleger would disregard a red arrow and collide with his truck. Further the unavoidable accident instruction inappropriately and improperly shifted the jury's focus from causation, the heart of the case, to an examination of whether a negligently oper-

ated vehicle's collision with a recklessly operated vehicle could be unavoidable. Given the complex issue of causation in this case, it was crucial that the jury receive a proper, clear and complete instruction on reckless causation consistent with the framework for analysis described in 11 *Del. C.* §§ 261–263. Therefore the judgment of the Superior Court is reversed and this case is remanded for a new trial.

VEASEY, Chief Justice, concurring.

I concur in the holding of the majority that there was plain error in the failure of the trial court to provide the jury with a correct statement of the law in accordance with 11 *Del. C.* § 263. Accordingly, I vote to reverse.[39]

Nevertheless, I share the dissent's concern regarding undue expansion of the plain error rule. I write separately to explain why the result in this case does not expand plain error review beyond the circumscribed limits set forth in our plain error jurisprudence.

If objection is not made at trial, we will not grant relief unless an appellant shows plain error.[40] That error must be obvious to the appellate court and must result in fundamental prejudice to the defendant. Accordingly, not all errors amount to plain error.[41]

---

**38.** *See Wainwright v. State*, Del.Supr., 504 A.2d 1096, 1099–1100 (1986) (en banc).

**39.** I am inclined to the view, however, that the defendant affirmatively acquiesced in the unavoidable accident jury instruction. That instruction, which is internally unexceptionable, may not have correctly fit the facts of this case. But the defendant requested it and would be barred from appealing it. But, in view of the reversal and the ordering of a new trial this issue is moot.

**40.** *See* Super. Ct. R. 52(b) (*"Plain Error.* Plain errors or defects affecting substantial rights may be noticed although they were not

brought to the attention of the court."); *Barnett v. State*, Del.Supr., 691 A.2d 614, 616 (1997) (referring to the "plain error 'interest of justice' exception provided for in Supreme Court Rule 8").

**41.** *See, e.g., Trump v. State*, Del.Supr., 753 A.2d 963, 970 (2000) ("...some members of the defense bar still fail to assert timely objections to prosecutorial misconduct. Such failures hinder the trial judge's ability to address the alleged misconduct during the trial and ultimately limit a defendant's chance of succeeding on appeal because counsel's failure to object leaves this Court with the more restricted plain error standard of review."); *id.*

In *Wainwright v. State*,[42] we explained the plain error standard as follows:

> Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process. Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice.

The burden of showing plain error lies with the appellant.[43] Even when an appellant has carried this burden, under the terms of Supreme Court Rule 8, we may exercise our discretion to decline to grant relief.[44] We must eschew the temptation to exercise the clarity of vision that comes with 20/20 hindsight to say—except with extreme reluctance—that the trial judge must jump in, *sua sponte*, and do this or do that to save a litigant or a lawyer from allowing error to seep into a trial.

This is one of those rare cases where the judge had a heightened duty to "get it right" when settling on what to tell the jury about the law. The plain error jurisprudence has limits. I do not say that in every case a materially incorrect jury charge will constitute plain error *per se*. But certainly this is a case where we must find plain error.

Our plain error review must be applied in conjunction with the imperative that a jury be given clear and correct guidance. A defendant is "entitled" to a "correct statement of the substance of the law."[45] We have stated that "[t]he primary purpose of jury instructions is to define with particularity the factual issues, and clearly to instruct the jury as to the principles of law which they are to apply in deciding the factual issues involved in the case before them."[46] Moreover, "jury instructions

---

at 968 ("Yet, had there been an objection, these phrases should have been found to be improper vouching."). *See also Brown v. State*, Del.Supr., 729 A.2d 259, 265 (1999) ("We have assumed *arguendo* that the Superior Court should have given a specific unanimity instruction to the jury, if it had been requested by Brown's attorney at trial. We have concluded, nevertheless, that the verdict in Brown's case demonstrates that the jury was not confused and that Brown's substantial rights were unaffected by that omission."); *id.* at 266 ("Although there was not plain error in Brown's case, the disjunctive joinder of two distinct offenses in an indictment is not advisable.").

**42.** Del.Supr., 504 A.2d 1096, 1100 (1986) (citations omitted).

**43.** *See Brown*, 729 A.2d at 265 ("Therefore, in this appeal, Brown has the burden of demonstrating that plain error occurred and affected his substantial rights." Supr. Ct. R. 8; Super. Ct.Crim. R. 52(b).) (*citing United States v. Olano*, 507 U.S. 725, 732–35, 113 S.Ct. 1770, 123 L.Ed.2d 508(1993)); *Stevenson v. State*, Del.Supr., 709 A.2d 619, 633 (1998) ("To establish plain error ... [Stevenson] has the

burden of showing that the improper arguments by the prosecutor not only created the possibility of prejudice, but that the errors worked to his actual substantial disadvantage.") (internal quotations and citation omitted).

Under federal jurisprudence, the difference between harmless error and plain error is that for plain error, "it is the defendant who bears the burden of persuasion with respect to prejudice." *Olano*, 507 U.S. at 734, 113 S.Ct. at 1778. *See* Super. Ct.Crim. R. 52(a) ("*Harmless Error*. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

**44.** *See* Supr. Ct. R. 8; Super. Ct.Crim. R. 52(b). *Cf. Olano*, 507 U.S. at 735–36, 113 S.Ct. at 1778–79 ; *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 1550, 137 L.Ed.2d 718 (1997).

**45.** *Grace v. State*, Del.Supr., 658 A.2d 1011, 1014 (1995).

**46.** *Zimmerman v. State*, Del.Supr., 565 A.2d 887, 890 (1989).

must be adapted to the factual situation of each case. In any criminal case, it is the duty of the jury to examine facts and assign to or eliminate criminal responsibility for specific individuals. The applicable principles of law and the identity of the persons involved must not be confused."[47]

In *Culver v. Bennett*,[48] a tort action, the appellants argued for the first time on appeal that the jury instructions had erroneously and confusingly "presented the jury with two separate and conflicting rules of legal causation": the "substantial factor rule" and the "but for" rule.[49] Analyzing whether it was plain error to use the term "substantial factor" notwithstanding Delaware's "common law adherence to the 'but for' rule of proximate cause," this Court noted that "this case presents questions of first impression concerning the

proper construction of Delaware's modified comparative negligence statute."[50] The Court determined that under Delaware law "the use of the term 'substantial factor' was erroneous and a deficiency which undoubtedly undermined the jury's ability to intelligently perform its duty...."[51] Similarly, in *Probst v. State*,[52] the appellant argued for the first time on appeal that the jury instruction was inadequate because it confusingly used male pronouns to refer to a female defendant in a case in which the actions of the defendant's brother were also critical.[53] Under plain error review, we found that the "jury instructions were erroneous as a matter of law."[54]

There is tension between the plain error rule, which limits our review of objections not made at trial, and the principle that a defendant is entitled to a correct statement of the law.[55] Application of the plain

47. *Probst v. State*, Del.Supr., 547 A.2d 114, 120 (1988) (citations omitted). Instructions must be substantially correct not flawless:
> In undertaking this evaluation, the jury instructions must be viewed as a whole. *See Flamer v. State*, Del.Supr., 490 A.2d 104, 128 (1984). Although some inaccuracies may appear in the jury instructions, this Court will reverse only if such deficiency undermined the ability of the jury "to intelligently perform its duty in returning a verdict." *Storey v. Castner*, Del.Supr., 314 A.2d 187, 194 (1973), *quoted in Flamer v. State*, 490 A.2d at 128. *See also Newnam v. Swetland*, Del.Supr., 338 A.2d 560, 562 (1975). A trial court's charge to the jury will not serve as grounds for reversible error if it is "reasonably informative and not misleading, judged by common practices and standards of verbal communication." *Baker v. Reid*, Del.Supr., 57 A.2d 103, 109 (1947), *quoted in Flamer v. State*, 490 A.2d at 128.

*Probst*, 547 A.2d at 119 (footnote omitted).

48. Del.Supr., 588 A.2d 1094, 1095 (1991).

49. *Id.* at 1096.

50. *Id.* at 1098, 1099.

51. *Id.; see also id.* at 1098 ("Since the issue of proximate cause is ordinarily a question of fact to be submitted to the jury, it is not only

appropriate but necessary for the trial judge to properly instruct upon that concept.") (citation omitted).

52. Del.Supr., 547 A.2d 114 (1988)

53. *See id.* at 118–20.

54. *Id.* at 120. *See also Taylor v. State*, Del. Supr., 464 A.2d 897, 899 (1983) ("Having found the instant instruction erroneous we must now determine whether it constitutes plain error since the defendant offered no objection to it at trial. Superior Court Criminal Rules 30(a) and 52(b).... It is our view that it is plain error to fail to instruct the jury on the necessary elements of the crime.").

55. *See also* Superior Court Criminal Rule 30. Rule 30 provides in relevant part: "No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto... stating distinctly the matter to which that party objects and the grounds of the objection." Although this language seemingly prohibits review of objections not made in compliance with the rule, the plain error rule "limits the otherwise absolute bar in Rule 30." *United States v. Ismel*, 4th Cir., 153 F.3d 723, 1998 WL 486356 (4th Cir.1998) (unpublished opinion). Thus an objection to a jury instruction raised for the first time on

error rule will continue to rest on the specific facts and circumstances of each case.[56] It is pertinent to note, however, as the majority does, that the trial judge has an "obligation to research the law and craft an appropriate charge."[57] This obligation is independent of a party's obligation to request instructions or make specific objections.[58]

An additional consideration exists when the legal issue presented for the first time on appeal is one of first impression. Our plain error review has been sensitive to the desirability of addressing such issues in order to provide guidance to future litigants[59] and to the related consideration of relieving the appellant from forfeiture arising in part from lack of clarity in the

law, assuming that all elements of the plain error standard are satisfied.[60]

These considerations are present in this case involving jury instructions on a very complex and potentially confusing substantive law issue not previously addressed by this Court. Moreover, this is a very serious homicide case involving this defendant's conviction of a class C felony and his sentence to five years at Level V, suspended after one year for declining levels of probation. As noted in the majority opinion, this Court has not decided any cases concerning the correct application of 11 *Del. C.* § 263, and there appears to be only one Delaware case to have instructed the jury on Section 263.[61]

appeal may be reviewed for plain error. *See, e.g., Stansbury v. State,* Del.Supr., 591 A.2d 188, 191 (1991); *United States v. Sotmayor–Vazquez,* 1st Cir., 249 F.3d 1, 2001 WL 487962, \*13 (2001) ("Because neither defendant objected to the instruction in accordance with Federal Rule of Criminal Procedure 30, we review for plain error.")

**56.** *See Ayers v. State,* Del.Supr., No. 300, 2000, 2001 WL 292610, Veasey, C.J. (March 16, 2001) (ORDER), Order at ¶ 6.

**57.** *United States v. Davis,* 3d Cir., 183 F.3d 231, 252 (1999).

**58.** *See Hall v. State,* Del.Supr., No. 380, 1989, 560 A.2d 490, 1989 WL 27783, Horsey, J. (March 3, 1989) (ORDER), Order at ¶ 4 ("Regardless of requests from the parties, the Superior Court has an obligation to charge the jury concerning the law in relation to the facts presented at trial.") (citation omitted); 9A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2556 (2d ed. 1995) ("It is the inescapable duty of the trial judge to instruct jurors, fully and correctly, on the applicable law of the case, and to guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search their truth. The court must instruct the jury properly on the controlling issues in the case even though there has been no request for an instruction or the instruction requested is defective.").

**59.** *See McBride v. State,* Del.Supr., 477 A.2d 174, 184 (1984) ("However, as the question of the effect of the 1977 amendment is one of first impression, we will waive Rule 8 in the interests of justice to provide guidance to the trial courts and future litigants. . . .").

**60.** *See Monroe v. State,* Del.Supr., 652 A.2d 560, 564 (1995) (reversing judgment of conviction based on finding of plain error; noting that "we have not previously addressed the question before the Court in this case"); *Culver,* 588 A.2d at 1098 (noting that "this case presents questions of first impression," and that " 'there is perhaps nothing in the field of law which has called forth more disagreement' or confusion in judicial opinions than attempts to clarify the concept of proximate cause") (citation omitted). *Cf. Shelton v. State,* Del.Supr., 744 A.2d 465, 497 n. 142 (2000) ("Because the right to allocution is arguably a 'substantial right' of a capital defendant, and the law of allocution is ambiguous in Delaware, we waive the waiver rule and consider the merits of Shelton's argument.") (citation omitted).

**61.** *State v. Witherspoon,* Del.Super., No. 9610003447, 1999 WL 744429, Silverman, J. (July 30, 1999), *aff'd, Witherspoon v. State,* Del.Supr., No. 460, 1999, 2001 WL 138499, Steele, J. (Feb. 14, 2001) (ORDER). There is a paucity of authority from other jurisdictions.

Section 263 is based on Section 2.03 of the Model Penal Code.[62] The Model Penal Code commentary underscores the necessity, explained in the majority opinion, of instructing the jury under Section 263 in cases such as this. Importantly, the commentary also frankly acknowledges the difficult nature of the problems of causation and culpability and the inchoate manner in which the Code addresses them:

These problems are currently dealt with as issues of "proximate causation" and present enormous difficulty (especially in homicide) because of the obscurity of that concept. Rather than seeking to systematize the varying and sometimes inconsistent rules in the numerous areas in which the problem has arisen, the section undertakes a fresh approach to the central issues.

\* \* \*

[This section] deals with situations in which the actual result involves the same kind of injury or harm as that designed or contemplated, but in which the precise injury inflicted was different or occurred in a different way. Here the Code makes no attempt to catalogue the possibilities—intervening or concurrent causes, natural or human, unexpected physical conditions; distinctions between mortal and nonmortal wounds; and so on. It deals only with the ultimate criterion by which the significance of such factors ought to be judged—whether the actual result is too remote

to have a [just] bearing on the actor's liability or the gravity of his offense.

\* \* \*

In general, the infinite variety of contexts in which the issue can arise precludes an advance catalogue of premises that can be used mechanically to deduce a solution. The issue should be put to the jury in terms of a general principle that articulates the ultimate basis of judgment.

\* \* \*

While it is true that the Model Code's formulation does not give a definitive resolution to most difficult cases, it has the twofold advantage of avoiding the confusing language of "proximate causation" and presenting clearly to the jurors the issues they should properly consider. It also casts aside the sometimes arbitrary distinctions of the common law. Hence, while one should not expect too much of the Code's general statutory formulation in an area as complex as this, such a formulation has significant advantages over no formulation at all. . . .

Commentary to Section 2.03 of the Model Penal Code at 255–56, 261, 262, 265–66.

In my view, the "enormous difficulty" sometimes engendered by this issue, combined with the fact that it is one of first impression in this Court in a serious criminal case, tips the balance toward a finding

---

**62.** *See* Comment to § 1.02, Delaware Criminal Code with Commentary (1973). The genesis of the present Delaware Criminal Code is set forth in the introductory section of the Delaware Criminal Code with Commentary. *See* Introduction, Delaware Criminal Code with Commentary (1973). The Model Penal Code, which was the work of the American Law Institute, was published in final form in 1962. In August 1965, Governor Charles L. Terry, Jr., appointed the Governor's Committee for Revision of the Criminal Law (on which committee I was honored to serve as

co-chair) "to study the need for criminal law reform in Delaware and to produce a draft of a new criminal code." The Committee issued a Proposed Delaware Criminal Code in 1967. *See* Governor's Committee for Revision of the Criminal Law, Proposed Delaware Criminal Code (1967). The Code was first introduced in the House of Representatives in December 1967. After some revisions, it was reintroduced in the Senate in May 1971, and was signed into law by the Governor on July 6, 1972. 58 Del. Laws, c. 497, § 1.

of plain error in this case because the instruction lacked essential clarity and was not a correct statement of the law.

WALSH, Justice, with whom BERGER, Justice, joins, dissenting.

The majority concludes that the trial court erred: (i) in failing, *sua sponte,* to instruct the jury concerning the application of 11 *Del. C.* § 263 and (ii) in giving an incorrect instruction on unavoidable accident. Acknowledging that the defendant did not request a § 263 instruction, (nor object to its absence), while affirmatively seeking the unavoidable accident instruction, the majority nevertheless reverses the conviction on the basis of plain error. Because I believe the majority holding extends the doctrine of plain error to unacceptable limits and creates an unfortunate precedent, I respectfully dissent.

The facts surrounding this fatal accident are relatively uncomplicated. The State presented evidence that Bullock, who had been drinking and exceeding the speed limit, accelerated while approaching an intersection where a traffic device displayed a yellow warning signal. The victim was making an illegal left turn in the face of a red light when her vehicle was struck by Bullock's vehicle. The State conceded that the decedent was partially at fault,[63] but claimed that Bullock's conduct was reckless and that such recklessness was a proximate cause of the accident. The defendant argued that the decedent's conduct was the sole proximate cause of the accident. The jury was instructed on "but-for" causation, recklessness and criminal negligence. Specifically, the jury was instructed that in order to find the defendant guilty of manslaughter it must be satisfied beyond a reasonable doubt that he "was aware of and consciously disregarded the risk that his conduct would cause death and also that the risk was so great that a reasonable person under the circumstances would have acted otherwise to avoid the risk." The jury found Bullock guilty of manslaughter and implicit in that verdict was the determination that the actual result of his conduct was foreseeable and that Alleger's conduct did not affect that foreseeability. The majority decision nullifies the verdict on the ground that the jury did not "receive proper, clear and complete instructions on reckless causation." But the content of those instructions were never disputed at trial. The trial judge conferred with counsel, prior to argument to the jury for the purpose of receiving requests for specific instructions, as required by Super. Ct.Crim. R. 30.[64]

---

**63.** In his jury summation, the prosecutor commented: "Without doubt in this particular case you cannot deny, the State concedes, that Jennifer Alleger was partially a cause of her own death. The fact that she pulled in front of him, that helped to cause her death." (A–35)

**64.** Rule 30. Instructions.

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to all parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury. The court may instruct the jury before or after the arguments are completed or at both times. All instructions shall be given by the court orally. In capital cases the court shall, and in other cases the court may, give the jury a copy of the instructions for use during deliberations. *No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before or at a time set by the court immediately after the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.* Opportunity shall be given to make the objection out of the hearing of the jury and, on the request of any party, out of the presence of the jury. (emphasis supplied)

Bullock's counsel did not make a request for an instruction on any aspect of the elements of the offenses of either manslaughter or the lesser included offense of criminally negligent homicide. Defense counsel did request that the Court give an accident instruction in the following colloquy:

> THE COURT: The jury may not buy into the accident defense, but the question is has enough evidence been adduced to warrant the giving of an accident instruction
>
> MR. RADULSKI: I believe so, Your Honor. I don't really think it matters how fast he was going. If she runs a red light, the jury could conclude that, hey, there's no way he could have avoided that.
>
> THE COURT: I think it does matter how fast he's going, but I think we'll hear about that in closing arguments. The slower the movement the more avoidable the accident.

The prosecutor commented that the court's proposed instruction was "incredibly confusing" and offered a form of instruction on unavoidable accident that had been developed by a jury instruction study group of Superior Court practitioners. The trial judge, noting that the State's proposed instruction was more appropriate for a motor vehicle type accident, inquired of defense counsel whether he had any objection to the State's proposed instruction. Defense counsel stated that not only did he not have an objection but commented that it was "more attractive than the Court's." In reliance upon that representation, the trial court so instructed the jury. Neither the defendant nor the State thereafter raised an objection to the court's jury instructions.

Following conviction, Bullock filed a "motion for judgment of acquittal/new trial" asserting that the jury's verdict was against the weight of the evidence. Again, Bullock alleged no error in the court's instruction to the jury nor sought any relief in that respect. To put the present claims of error in perspective, the appellant seeks the intervention of this Court for alleged errors in jury instruction that, contrary to the requirements of Super. Ct.Crim. R. 30, he either failed to request or affirmatively sought and never brought to the attention of the court at trial or in a post-trial motion for a new trial. Thus, we are being asked to review claims that the defendant had the opportunity to present, but did not, on three occasions to the trial judge: (i) at the instruction conference, (ii) before the jury deliberated and (iii) in a post-trial motion for a new trial. This Court's definition of plain error was articulated in *Wainwright v. State,* Del.Supr., 504 A.2d 1096, 1100 (1986), *cert. denied,* 479 U.S. 869, 107 S.Ct. 236, 93 L.Ed.2d 161.[65]

> Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process .... [T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice.

**65.** The majority cites *Wainwright* as authority for its holding that "an improper jury instruction may amount to plain error despite a defendant's acceptance of it." *Wainwright,* of course, did not involve a claim of plain error directed to jury instructions but to the admissibility of the defendant's incriminating statement secured in violation of constitutional safeguards announced in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

Since our holding in *Wainwright,* we have reserved the plain error standard to claims affecting substantial rights, *i.e.* of constitutional dimension, because only such claims can be said to "jeopardize the fairness and integrity of the trial process." Such errors, though forfeited for failure to assert them at trial, are nevertheless reviewable because of their seriousness and demonstrated effect on the trial result. *See, e.g., Smith v. State,* Del.Supr., 647 A.2d 1083, 1086 (1994) (admissibility of statement in violation of confrontation clause reviewed under plain error standard despite absence of objection). There is a conceptual difference between reviewing a forfeited error and an error that has been waived. That distinction has been well formulated by the United States Supreme Court and implemented by subsequent federal decisions. In *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Supreme Court considered the question of whether the presence of alternate jurors during jury deliberations, an admitted irregularity, could be reviewed under a plain error standard.[66] In determining that the claimed error did not affect substantial rights, the court noted that the plain error standard is intended to correct errors that are forfeited, not those that are waived: "If a legal rule was violated during the district court proceedings, and if the defendant did not waive the rule, then there has been an 'error' within the meaning of Rule 52(b) despite the absence of a timely objection." *Id.* at 733–34, 113 S.Ct. 1770. Decisions following *Olano* have made clear that only forfeited errors are reviewable for plain error. *United States v. Perez,* 9th Cir., 116 F.3d 840, 845 (1997); *United States v. Lakich,* 7th Cir., 23 F.3d 1203,

1207 (1994) (stating that "if there has been a valid waiver, there is no "error" for [the court] to correct").

In cases involving a defendant's failure to object to jury instructions, it has been held that the defendant's approval or submission of the instruction constitutes a waiver. *See United States v. Griffin,* 7th Cir., 84 F.3d 912, 924 (1996) (stating that waiver must arise out of voluntary affirmative conduct and finding waiver where defendant's attorney approved the claimed improper instruction); *Lakich,* 23 F.3d at 1207 (finding that submission of jury instruction by defendant's counsel was insufficient to preserve issue and holding that counsel's express agreement with the instruction constituted waiver); *but see United States v. Bailey,* 7th Cir., 227 F.3d 792 (2000) (finding no intentional relinquishment of right to object to jury instruction on appeal where defense counsel made an objection at trial to proposed instruction but argued on appeal the instruction was improper for reasons different from those previously cited).

This Court has also made clear that the failure of counsel to object to a jury instruction cannot be the basis for plain error as long as the jury instruction is a correct statement "of the substance of the law." *Grace v. State,* Del.Supr., 658 A.2d 1011 (1995). In *Grace,* we noted that the fact that the court's instruction "differed from the desired instruction is irrelevant" and emphasized that it was the defendant's "responsibility to object to the instructions" and the failure to do so constitutes waiver. *Id.* at 1014. Again, in *Chance v. State,* Del.Supr., 685 A.2d 351, 360 (1996) this Court ruled that the omission of an accomplice liability instruction which

---

66. The federal plain error standard, a limitation on the reviewing authority of the federal courts of appeals, is found in Federal Rule of Criminal Procedure 52(b) which provides: "Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Delaware's statutory counterpart is substantially the same as the federal rule. *See* Supr. Ct. Crim. R. 52(b).

"should have" been included in the jury charge, but the absence of which was not raised at trial, was not plain error.

A practical consequence of today's ruling will be that a trial judge attempting to craft jury instructions acceptable to the parties, and reflecting a correct statement of the law, will be at a serious disadvantage. Counsel's acquiescence in proposed instructions and failure to object before the jury retires will not serve to insulate the result from a claim of plain error. Not only will Rule 30 become meaningless but its violation, as here, will provide the very basis for appeal. Reversing a trial judge on the basis of an issue he or she did not have an opportunity to consider should be limited to egregious errors, not those involving the omitted subtleties of jury instructions or the giving of an instruction in the precise form requested by counsel. As one court noted:

> In our adversarial system, so long as the proceeding is conducted within the bounds of fundamental fairness, it is not the duty of the trial court to anticipate and evaluate every possible error that might be alleged. Rather, it is the role of counsel to bring such maters to the court's attention.

*United States v. Thornberg*, 8th Cir., 844 F.2d 573, 575 (1988).

While arguably 11 *Del. C.* § 263 might have had a bearing on the result in this case had there been a genuine issue of transferred recklessness, its application here is, at best, tenuous. As the Commentary to § 263 makes clear, the concept of transferred recklessness is consistent with the theory of transferred intent embraced in § 262, which, in turn, finds support in earlier Delaware cases. The jury was instructed that a person acts recklessly with respect to death when he or she is aware of and consciously disregards a substantial and unjustifiable risk that death will result from his or her conduct. Bullock did not claim at trial that the actual result in his situation was "outside" the risk of which he was aware. He thus cannot demonstrate that his substantial rights were prejudiced by the trial court's failure, *sua sponte*, to instruct the jury pursuant to 11 *Del. C.* § 263.

I recognize that there may be unusual situations where the absence of a constitutionally-required portion of a jury instruction cannot be deemed as waived by counsel's action or inaction. But the remedy for such egregious error may be a claim of plain error in a direct appeal or a claim of ineffective assistance of counsel under Super. Ct.Crim. R. 61. An expansive application of the doctrine of plain error, however, to accommodate arguably insufficient jury instructions, as is this case, is not the answer. Accordingly, I dissent.