Edward N. JOHNSON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 46,1999.

Supreme Court of Delaware.

Submitted: June 26, 2001.

Decided: Oct. 23, 2001.

Thomas A. Foley, Wilmington, for appellant.

John Williams, Department of Justice, Dover, for appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER, and STEELE, Justices.

HOLLAND, Justice:

The defendant-appellant, Edward N. Johnson, was charged with: Trafficking Cocaine,[1] Possession with Intent to Deliver a Narcotic Schedule II Controlled Substance,[2] and Endangering the Welfare of a Child.[3] Following a jury trial in the Superior Court, Johnson was convicted as charged. He was sentenced, *inter alia*, to be incarcerated for thirty years.

This is Johnson's direct appeal. The sole issue originally presented to this Court was an argument that it was plain error for the State, during its case-in-chief, to introduce drug courier profile evidence through the testimony of a police officer who was appearing as an expert witness. In a prior opinion, we concluded that the plain error claim presented by Johnson raises an issue about the effectiveness of his trial counsel. We remanded the case for a hearing on the issue of ineffective assistance of trial counsel. In the interests of justice and judicial economy, we decided to defer ruling on the plain error issue.

Upon remand, the Superior Court concluded that Johnson's trial attorney was not ineffective. The parties have filed sup-

1. 16 *Del. C.* § 4753A(a)(2)(c).

2. 16 *Del. C.* § 4751(a).

3. 11 *Del. C.* § 1102(1)(a).

plemental briefs addressing that issue. The matter is now before this Court to decide Johnson's original claim of plain error and the supplemental issue regarding the effectiveness of Johnson's trial counsel.

We have concluded that Johnson has failed to demonstrate plain error. We have also concluded that the Superior Court's determination regarding the effectiveness of Johnson's trial counsel is the product of an orderly and logical deductive process. Accordingly, the Superior Court's judgments of conviction are affirmed.

### FACTS [4]

At approximately 9:00 p.m. on December 2, 1997, officers from the City of Dover Police Department were dispatched to an apartment in response to an "assault in progress" complaint made by an anonymous female 911 caller. Upon entering the premises, a second floor apartment, the officers discovered Johnson lying on the living room/kitchen floor. Johnson had been shot in the thigh. His legs were bound together with duct tape. It was later determined that the beating had also fractured Johnson's right femur. When the officers arrived at the apartment, Johnson told them that a person named Chris had shot him.

In the apartment, the police officers also discovered a small female child, later determined to be 18–months old, positioned on the floor next to Johnson. On the same floor, the police discovered a .25 caliber shell casing, a clean diaper, a roll of duct tape, and a box of sandwich type bags. Another box, containing several .25 caliber rounds, was found on the kitchen counter. The police found Cheryl Harris, the ten-

ant, sitting in her bedroom. Harris's lethargic presence made the officers believe that she was under the influence of some drug.

The paramedics took both Johnson and the child to the Kent General Hospital. The police assumed the child was Johnson's daughter. Once at Kent General, a nurse cared for the child, while other medical staff in the emergency room attended to Johnson's wounds. Because the child's diaper felt heavy, the nurse proceeded to change the child's diaper in an adjacent room.

When the nurse opened the diaper, she discovered two bags containing a total of 136 grams of cocaine inside the diaper. There were also several paper towels that were placed between the cocaine and the child's crotch. Although the paper towels appeared soiled, the diaper was dry.

Without telling Johnson that cocaine had been discovered in the child's diaper, a detective questioned Johnson in the emergency room. Johnson told the detective that he was from New Jersey. According to Johnson, he and the child were going to Maryland in a rental car to visit a person named Charles Riley. Johnson said he did not know the name of the town in Maryland where Riley lived. While driving to Maryland, Johnson stated that he was paged by Chris, who asked Johnson to come to the Dover apartment.

After arriving at the Dover address, Johnson approached the apartment. He was immediately accosted by two males, one of whom had a gun. The assailants forced Johnson upstairs into an apartment. One of the assailants took the child from him. Johnson was beaten and bound with duct tape, before being shot in the leg by

---

4. This is the same recitation of facts that appears in our prior opinion. *Johnson v. State,* Del.Supr., 765 A.2d 926, 927–29 (2000).

We have repeated the facts for the convenience of the parties.

Chris. Johnson told the police that Chris and he had "a beef" earlier in their relationship, but did not know why Chris and the others attacked him.

When the detective confronted Johnson about the cocaine found inside the diaper, Johnson denied any knowledge. He surmised that Chris must have planted it to set him up. The police suspected that "Chris" was Chris Burroughs, who was known to them as a drug dealer in Dover, and frequented the Dover apartment where they found Johnson. After presenting him with a photo line-up, Johnson identified Burroughs as the person who shot him.

Upon searching Johnson's clothing at the hospital, the police found keys for an Avis rental car. These keys listed the tag number for an automobile. Other Dover police officers located the rental car parked approximately 150 feet from the Dover apartment where Johnson had been found. The police suspected that someone had rummaged through the car, which was unlocked when they found it.

After obtaining a search warrant, the Dover Police conducted a thorough search of the car. No contraband or drug paraphernalia was found in the car. The police did, however, seize: correspondence, addressed to Johnson at a Poughkeepsie, New York address; an Avis rental agreement, issued to a "Lincoln Grant" that same day at 3:55 p.m. in Mount Vernon, New York; and a backpack containing the same type of diapers worn by the infant child who was with Johnson.

Without any objection from Johnson's defense attorney at trial, the State called Detective William L. Kent to testify as an expert witness regarding the sale of illegal drugs. Detective Kent told the jury that

Johnson fit the profile of a drug courier because: Mount Vernon, New York, where the car was rented, is only 10–15 miles north of the Bronx; that New York City is a major "source city" for cocaine sold in Dover; and that illegal drug dealers often have couriers transport the contraband in rental cars. In its closing argument to the jury, the State theorized that the drugs must have belonged to Johnson, in part, because he is from New York City, the source city for cocaine, and because he had a rental car, a "red flag" indicator for a drug courier.

Johnson did not testify at trial. His defense attorney argued that no one saw Johnson place two plastic bags of crack cocaine in the 18–month–old child's diaper. The defense attorney also argued that any contraband found in the diaper was probably put there by Johnson's attackers, in order to get Johnson in trouble with the police.

The jury found Johnson guilty of Trafficking Cocaine, Possession with Intent to Deliver Cocaine, and Endangering the Welfare of a Child. Johnson's sentences included a minimum mandatory term of 30 years imprisonment.

### *Plain Error Review*

In this appeal, Johnson argues that it was reversible error for the jury to hear Detective Kent's testimonial evidence that Johnson fit the profile of a drug courier. Johnson's trial attorney, however, made no contemporaneous objection to the drug courier profile evidence offered by Detective Kent at trial. Accordingly, Johnson's claim that the drug courier profile evidence was inadmissible may be reviewed in this direct appeal only for plain error.[5]

5. Supr. Ct. R. 8; D.R.E. 103(d); *McDade v. State,* Del.Supr., 693 A.2d 1062, 1064 (1997); *Chance v. State,* Del.Supr., 685 A.2d 351, 354 (1996).

■ Under the plain error standard of review, this Court will take notice of and grant relief for "plain errors affecting substantial rights" of a defendant.[6] In demonstrating that an error not raised at trial constitutes plain error, the burden of persuasion is on the defendant to prove both aspects of this standard of appellate review.[7] First, to be "plain," the error must be clear under current law.[8] Second, to adversely affect "substantial rights," the alleged error must be so clearly prejudicial as to jeopardize the fairness and integrity of the trial process.[9]

■ The United States Supreme Court and this Court have not yet decided whether drug courier profile evidence may be introduced during a criminal trial, as substantive evidence of guilt, as distinguished from being considered as a component of probable cause for a search or seizure by law enforcement officers.[10] There is a split of authority among the federal Circuit Courts of Appeals that have addressed the former issue on the merits.[11] The use of drug courier profile evidence is "vigorously debated in academic circles." [12] We are persuaded by the *ratio decidendi* of those

6. D.R.E. 103(d); *Jackson v. State,* Del.Supr., 600 A.2d 21, 23 (1991).

7. *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *Stevenson v. State,* Del.Supr., 709 A.2d 619, 633 (quoting *Sullivan v. State,* Del.Supr., 636 A.2d 931, 942 (1994)).

8. *United States v. Olano,* 507 U.S. at 734, 113 S.Ct. 1770.

9. *Wainwright v. State,* Del.Supr., 504 A.2d 1096, 1100 (1986).

10. Mark J. Kadish, *The Drug Courier Profile: In Planes, Trains and Automobiles; and Now in the Jury Box,* 46 Am. U.L. Rev. 747, 760 (1997). *See also United States v. Sokolow,* 490 U.S. 1, 11, 17, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (Marshall, J., dissenting); *Florida v. Royer,* 460 U.S. 491, 493–95, 508, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Reid v. Georgia,* 448 U.S. 438, 440–41, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (per curiam); *United States v. Mendenhall,* 446 U.S. 544, 548–49, 562, 565, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Quarles v. State,* Del.Supr., 696 A.2d 1334, 1337–38 (1997) (citing *United States v. Sokolow,* 490 U.S. 1 at 7, 109 S.Ct. 1581, 104 L.Ed.2d 1); *Jarvis v. State,* Del.Supr., 600 A.2d 38, 42 (1991).

11. *See United States v. Doe,* 7th Cir., 149 F.3d 634, 636–38 (1998); *United States v. Solis,* 7th Cir., 923 F.2d 548, 550–51 (1991); *United States v. Teslim,* 7th Cir., 869 F.2d 316, 324 (1989). *See also United States v. Foster,* 7th Cir., 939 F.2d 445, 451 (1991). *Compare United States v. Murillo,* 9th Cir., 255 F.3d 1169, 1176–78 (2001); *United States v. Vallejo,* 9th Cir., 237 F.3d 1008, 2001 U.S.App. Lexis 7367, at *16–19, Wardlaw, J. (2001); *United States v. Baron,* 9th Cir., 94 F.3d 1312, 1320–21 (1996); *United States v. Vasquez,* 8th Cir., 213 F.3d 425, 426 (2000); *United States v. Small,* D.C.Cir., 74 F.3d 1276, 1283 (1996); *United States v. Williams,* 5th Cir., 957 F.2d 1238, 1242 (1992) (prejudicial nature of profile evidence outweighs its probative value); *United States v. Quigley,* 8th Cir., 890 F.2d 1019, 1024 (1989); *United States v. Beltran–Rios,* 9th Cir., 878 F.2d 1208, 1210–13 (1989); *United States v. Hernandez–Cuartas,* 11th Cir., 717 F.2d 552, 555 (1983). *See also* Jay M. Zitter, Annotation, *Admissibility of Drug Courier Profile Testimony in Criminal Prosecution,* 69 A.L.R. 5th 425, 440–42 (1999).

12. *Quarles v. State,* 696 A.2d at 1338 (majority opinion); Kadish, 46 Am. U.L. Rev. at 753 n. 10. *See generally* Alexandra Coulter, *Drug Couriers and the Fourth Amendment: Vanishing Privacy Rights for Commercial Passengers,* 43 Vand. L. Rev. 1311, 1338–41 (1990); Irene Dey, *Drug Courier Profiles: An Infringement on Fourth Amendment Rights,* 28 U. Balt. L.F. 3, 6–10 (1998); Stephen E. Hall, *A Balancing Approach to the Constitutionality of Drug Courier Profiles,* 1993 U. Ill. L. Rev. 1007, 1020–26 (1993); Jodi Sax, *Drug Courier Profiles, Airport Stops and the Inherent Unreasonableness of the Reasonable Suspicion Standard After United States v. Sokolow,* 25 Loy. L.A. L. Rev. 321 (1991); Brian A. Wilson, *The War on Drugs: Evening the Odds through Use of the Airport Drug Courier Profile,* 6 B.U. Pub. Int. L.J. 203, 225–34 (1996).

166

cases that hold drug courier profile evidence may not be admitted during a criminal trial as substantive evidence of guilt.

■ Nevertheless, Johnson has not demonstrated plain error. The Second and Ninth Circuit Courts of Appeals, have each stated: "we do not see how an error can be plain error when the Supreme Court and this court have not spoken on the subject and the authority in other circuits is split."[13] We agree. If neither the United States Supreme Court nor this Court has definitively ruled on the issue of whether drug courier profile evidence can be used as substantive evidence of guilt, and the federal courts that have addressed the issue are divided, we conclude that the Superior Court's· failure to exclude such evidence *sua sponte*, in the absence of any contemporaneous defense objection, did not constitute plain error.[14]

### *Trial Counsel's Effectiveness*

The Superior Court held a hearing on the issue of whether Johnson received effective assistance of trial counsel. The hearing was for the purpose of addressing that issue in all respects. Testimony was presented by Johnson's trial counsel, who was called by the State, and by two other attorneys, who were called as expert witnesses by the defense.

The record reflects that Johnson's trial counsel is an experienced criminal defense attorney. According to Johnson's trial counsel, she analyzed the matter as a constructive possession case in which the best defense would be an argument that the cocaine was not in Johnson's possession.

The two attorneys who testified as expert witnesses agreed that this was a reasonable and logical defense strategy.

The central issues regarding Johnson's allegation of ineffective representation at trial relate to the testimony of Detective Kent. Prior to trial, the State informed Johnson's attorney by letter that it would offer expert testimony by Detective Kent. The letter represented that Detective Kent would testify, *inter alia*, that "it is a common practice for drug dealers to transport illegal drugs to Delaware from New York City and other locations in rented vehicles."

Johnson's trial counsel testified that she viewed the testimony of Detective Kent, including his testimony about New York City as a drug source city and the use of rental cars, as admissible *modus operandi* evidence that was common in drug trials. She testified that she was aware of this Court's decision in *Quarles* but was not aware of any authority in Delaware that held Detective Kent's testimony about rental cars or New York City would be inadmissible.[15] She also concluded there was no basis upon which to challenge Kent's expert testimony on a foundational basis.

Accordingly, Johnson's trial attorney did not object to Detective Kent's testimony but instead followed her planned strategy of attacking the significance of that evidence. She emphasized that Johnson was from Poughkeepsie, not New York City; that Johnson was not the person who had rented the vehicle (Lincoln Grant had); and there was no evidence that Johnson

**13.** *United States v. Thompson,* 9th Cir., 82 F.3d 849, 854–55 (1996); *United States v. Alli–Balogun,* 2d Cir., 72 F.3d 9, 12 (1995).

**14.** Supr. Ct. R. 8; *United States v. Thompson,* 82 F.3d at 854–55; *United States v. Alli–Balogun,* 72 F.3d at 12.

**15.** *Quarles v. State,* Del.Supr., 696 A.2d 1334 (1997).

had any private vehicle to protect from seizure. Johnson's trial counsel also testified that, in her opinion, Detective Kent's testimony about New York City and rental cars was not especially powerful evidence for the State.

The two attorneys called as expert witnesses by the defense were both experienced criminal defense attorneys. Both also had substantial experience as former prosecutors. Both testified that they would have raised objections to Detective Kent's proposed expert testimony about rental cars and New York City prior to trial or at the commencement of trial, before the opening statements were made.

 In order to prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must show that defense counsel's conduct fell below an objective standard of reasonableness and that defense counsel's conduct caused prejudice because there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[16] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[17]

 In this appeal, as in the Superior Court, Johnson's first contention is that his trial counsel was ineffective for failing to object to Detective Kent's expert testimony on the grounds that it lacked an adequate foundation and was inadmissible under *Daubert; Kumho;* and *M.G. Bancorporation.*[18] The record reflects that Detective Kent had been with Dover's drug, vice and organized crime unit for over four years and had been its section

chief for over two years. He had been involved in hundreds of drug investigations and arrests, was well trained and had involvement in federal drug operations through the Dover Drug Enforcement Administration Task Force.

The Superior Court concluded that trial counsel's decision not to object on foundational grounds did not fall below an objective standard of reasonableness. According to the Superior Court, if such an objection had been made, an opportunity for voir dire would in all probability have been permitted, and the objection would in all likelihood have been overruled. The Superior Court's holding that Johnson's first claim of ineffective representation failed under both prongs of the *Strickland* analysis is supported by the record and the product of an orderly deductive process.

 Johnson's second contention is that his trial counsel was ineffective for failing to object to Detective Kent's testimony that New York City was a major source city for drugs coming to Dover and that the use of rental vehicles was one of the means by which people transport drugs. According to Johnson, such evidence is prejudicial drug courier profile evidence. The Superior Court analyzed that claim, in accordance with the dual aspects of the *Strickland* standard, as follows:

> As to whether or not counsel's failure to object fell below an objective standard of reasonableness, there are a number of factors to consider. One is that two, experienced criminal defense attorneys would have objected for the reasons

---

**16.** *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Shelton v. State,* Del.Supr., 744 A.2d 465 (2000).

**17.** *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. 2052.

**18.** *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); *M.G. Bancorporation, Inc. v. Le Beau,* Del.Supr., 737 A.2d 513 (1999).

which they stated in their testimony. A second, however, is that expert testimony from police officers is routinely admitted to describe various features of drug activity.[19] This includes cases where possession is a central issue.[20] Third, the admissibility or inadmissibility of "drug courier profile" evidence as substantive evidence at trial has not been developed through case law in this state. Fourth, the testimony of Detective Kent was not "drug courier profile" evidence in the form and context in which it is ordinarily seen. Typically "drug courier profile" evidence is presented as part of the basis for stopping and searching a particular individual who otherwise may simply be a traveler, and then, after having been used to assist in his identification in the first place, is offered as substantive evidence of guilt.[21] Here the testimony about New York City being a major source city and people using rental cars to transport drugs was one part of some very matter of fact testimony about how drugs get to Dover, values of various quantities and the "freshness" and other characteristics of the drugs found in the diaper. And finally, the testimony was relevant and was similar to *modus operandi* evidence which is frequently the subject of expert testimony. Under all of the circumstances, I conclude that trial counsel's failure to object does not fall below an objective standard of reasonableness.

I also conclude that [Johnson's] claim fails the second prong of *Strickland.* If the drug source city and rental car testimony were omitted, all of the other circumstantial evidence of [Johnson's] guilt still remains including much of Detective Kent's testimony. The scenarios which [Johnson] offered at trial are not very plausible.

The Superior Court's holding that rejected Johnson's second allegation of ineffective assistance of trial counsel is supported by the record and is a product of an orderly deductive process.

### Conclusion

Johnson has failed to demonstrate plain error. The Superior Court properly held that Johnson's right to the effective assistance of counsel at trial, as guaranteed by the United States Constitution, was not violated. Therefore, the judgments of the Superior Court are affirmed.

**19.** *See,* for example, *Morales v. State,* Del. Supr., 696 A.2d 390 (1997); *Rodriguez v. State,* Del.Supr., 648 A.2d 426 (1994); *Jordan v. State,* Del.Supr., 628 A.2d 84 (1993); *Mason v. State,* Del.Supr., 590 A.2d 502 (1991); *Husser v. State,* Del.Supr., 533 A.2d 1254 (1987); *State v. Owens,* Del.Super., Cr.A. No. IN92–02–1832, 1993 WL 81269, 1993 Del.Super. Lexis 97, Alford, J. (Mar. 12, 1993).

**20.** *See,* for example, *Rodriguez v. State,* 648 A.2d at 426.

**21.** *See* Zitter, 69 A.L.R. 5th at 425.