IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PAUL KIBIRO, | § | |
| | § | No. 37, 2025 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | ID No. 2304011777 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: January 14, 2026
Decided: March 27, 2026

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## <u>**ORDER**</u>

This 27th day of March, 2026, after consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) Following a six-day Superior Court trial, a jury found Paul Kibiro guilty of manslaughter, three counts of first-degree vehicular assault, driving under the influence of alcohol, and two motor vehicle offenses. Kibiro's charges stemmed from a two-car motor-vehicle collision in which one person was killed and three others were seriously injured. After the jury's verdict, the court sentenced Kibiro to nine years of unsuspended imprisonment.

(2) For the manslaughter and vehicular assault charges, the State was required to establish reckless causation. It did so through the testimony of three witnesses who testified that Kibiro's vehicle—travelling at a high rate of speed in light rain—failed to safely negotiate a curve in the road and left its assigned lane of travel into the path of the vehicle occupied by the decedent and his companions. On top of that, the State introduced the results of a blood test that revealed that Kibiro's blood alcohol content less than three hours after the accident was .14%.

(3) Kibiro offered no evidence at trial and did not testify. His counsel argued to the jury that the jury could find from the State's evidence that the victims' vehicle had turned into Kibiro's vehicle, which was—or so the argument went—in the proper lane of travel.

(4) In this appeal, Kibiro argues that we should overturn his convictions because the trial court did not instruct the jury in accordance with 11 *Del. C.* § 263, which addresses circumstances under which reckless causation is not established. Kibiro did not request such an instruction; hence, we review his claim under the plain-error standard. Because we detect no plain error, we affirm Kibiro's convictions.

(5) On the evening of April 22, 2023, Kibiro was driving on Fieldsboro Road, a two-lane road in Townsend, Delaware. Amatul Khalid, along with three

2

other passengers, were headed in the opposite direction. The road had several turns, and the posted speed limit was 50 miles per hour.

(6) As Khalid continued down the road, she noticed a fast-approaching oncoming car, which was later determined to be Kibiro's, move into her lane. She recalled moving "a little bit" to the left, without entering the oncoming lane of travel, to avoid the oncoming car.[1] For a moment, the car ahead disappeared from her sight; she thought that it "lost control" or drove off the road.[2] Suddenly, she "saw lights one second before and then there was a bang."[3]

(7) Delaware State Police Corporal Kurt Koonhow was dispatched to the scene. When he arrived, he observed two vehicles with "extensive damage . . . somewhat in the westbound lanes and partially off the roadway."[4] He interviewed Kibiro, who had already stepped out of his vehicle. Kibiro told the corporal that his "vehicle skidded, which caused the crash."[5] Kibiro also spoke to another Delaware State Police officer, Corporal Stephen Douglas, and that exchange was captured on Douglas's body-worn camera, which was played at trial.

(8) Kibiro's blood was later drawn; the results showed that he had a blood alcohol content of .14, above the legal limit (.08). Khalid and the other passengers

---

[1] App. to Answering Br. at B33–34.
[2] *Id.* at B30.
[3] *Id.*
[4] *Id.* at B62.
[5] *Id.*

in her car were transported to the hospital. One of the passengers, Amtus Shafiq, died from multiple blunt force injuries.

(9) Sgt. John Jefferson, a trained and experienced collision reconstructionist assigned to the Delaware State Police Collision Reconstruction Unit, led the investigation of the collision. He reviewed, among other things, data from Kibiro's airbag control module, data from Khalid's vehicle, and the layout of the roadway. Sgt. Jefferson concluded that Kibiro caused the collision and that he "must have been in the opposite lane of travel" just before it occurred.[6]

(10) A grand jury indicted Kibiro on one count of manslaughter, three counts of first-degree assault, one count of driving a vehicle while under the influence of alcohol or with a prohibited alcohol content, one count of speeding, and one count of failing to drive on the right side of a roadway. The Superior Court held a jury trial, lasting just over one week. Before the jury deliberated, the trial judge read the jury instructions, which included an instruction about reckless causation:

> Every criminal offense is made up of essential elements. To find the defendant guilty of manslaughter as alleged in Count 1 of the indictment, you must find that each of the following elements has been established beyond a reasonable doubt:
>
> One, the defendant caused the death of Amtus Shafiq; and two, the defendant acted recklessly in causing Amtus Shafiq's death.

---

[6] *Id.* at B141, B145.

*One causes the death of another person when he brings about that person's death and that death would not have happened but for his act.*

*One acts recklessly with respect to causing another's death when he is aware of and consciously disregards a substantial and unjustifiable risk that death to another person exists or will result from his conduct.*

The risk must be of such a nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in this situation.

A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto.

Lastly, under Delaware law, when recklessness suffices to establish an element of an offense, that element also is established if one acts knowingly.[7]

(11) The court did not, however, instruct the jury under 11 *Del. C.* § 263, which provides when reckless or negligent causation is not established:

The element of reckless or negligent causation is not established if the actual result is outside the risk of which the defendant is aware or, in the case of negligence, of which the defendant should be aware unless:

(1) The actual result differs from the probable result only in the respect that a different person or different property is injured or affected or that the probable injury or harm would have been more serious or more extensive than that caused; or

(2) The actual result involves the same kind of injury or harm as the probable result and is not too remote or accidental in its occurrence to have a bearing on the actor's liability or on the gravity of the offense.[8]

---

[7] *Id.* at B227–28 (emphasis added).
[8] *See id.* at B227–28; 11 *Del. C.* § 263.

5

(12) Kibiro now argues that he was entitled to a § 263 instruction despite not requesting one at trial. Because, in his view, there were facts from which a jury could conclude that Khalid caused Shafiq's death—by her failed attempt to avoid a collision with him—the Superior Court committed plain error by not instructing the jury *sua sponte* of the "circumstances under which reckless or negligent causation may not be established."[9]

(13) Because Kibiro did not request the instruction in the trial court, we review the trial court's failure to give it for plain error. As we recently re-affirmed, "[p]lain errors are 'material defects which are apparent on the face of the record, which are basic, serious, and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice.'"[10] If there is such an error that was not waived and the record adequately permits its consideration, we consider whether the error adversely affected the substantial rights of the party raising it.[11] "To affect the substantial rights of a party, the error must 'be so clearly prejudicial as to jeopardize the fairness and integrity of the trial process.'"[12] And the defendant carries the burden of showing prejudice to substantial rights.[13]

---

[9] Opening Br. at 13 (citing *Bullock v. State*, 775 A.2d 1043, 1049 (Del. 2001)).

[10] *Suber v. State*, __ A.3d __, 2026 WL 184867, at *5 (Del. Jan. 15, 2026) (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986)).

[11] *Id.* at *6.

[12] *Id.* (quoting *Johnson v. State*, 813 A.2d 161, 165 (Del. 2001)).

[13] *Id.*

(14)   But the analysis described above only proceeds upon our detection of an error.  And here we see none.

(15)   When a court fails "to give appropriate instructions on [a] critical theory of defense," the jury's ability to "'intelligently perform its duty in returnin[g] a verdict'" is undermined, constituting reversible error.[14]  But "[a]s a general rule, a defendant is not entitled to a particular instruction," and that is the case here.[15]

(16)   Kibiro's sole argument hinges on whether our decision in *Bullock v. State*[16] applies.  In *Bullock*, the defendant was driving at a high speed, while under the influence, when he collided with another vehicle at an intersection.  The victim, who was driving the other vehicle, entered the intersection by running a red light.  After reviewing the evidence, the State's accident reconstruction expert concluded that "the primary contributing circumstance of the collision was [the victim] passing a red light."[17]  This prompted Bullock to argue on appeal that the expert's conclusion "in effect, concluded that [the victim], not [him], was the proximate cause of the accident."[18]  Thus, in Bullock's view, "no reasonable juror could [have] conclude[d]

---

[14] *Newnam v. Swetland*, 338 A.2d 560, 562 (Del. 1975) (quoting *Storey v. Castner*, 314 A.2d 187 (Del. 1973)).

[15] *Flamer v. State*, 490 A.2d 104, 128 (Del. 1983) (citing *Miller v. State*, 224 A.2d 592, 596 (Del. 1966)).

[16] 775 A.2d 1043 (Del. 2001).

[17] *Id.* at 1046.

[18] *Id.* at 1048; *see also id.* at 1046 ("Strohm concluded that, while Bullock's speed and consumption of alcohol may have contributed to the accident, 'the primary contributing circumstance of the collision was Ms. Alleger passing a red light.'").

that he proximately caused the collision because [the victim's] negligence was an intervening and superseding cause of the collision."[19]  Under these circumstances, Bullock contended that he was entitled to an instruction under 11 *Del. C.* § 263. More specifically, he maintained that the trial court should have instructed the jury that "reckless causation is not established if the actual result [the victim's death] is outside the risk of which [the defendant] was aware [the victim illegally disregarding a red arrow] . . ."[20]

Bullock asserted further that the trial court's failure to provide that instruction was plain error.  We agreed, addressing the causation analysis that a jury must undertake:

> [The victim's] conduct must be, as a matter of fact, incorporated into the instruction in order to allow the jury to assess intelligently its bearing upon the defendant's awareness that death could result from his presence in the intersection on a yellow light and at the speed that he traveled.  They must assess, as well, the remoteness or the probability that at that very same instant [the victim] would disregard a red signal and put her vehicle in his path.  Put more plainly, were these odds so great that this chain of events would occur that the jury could conclude that the events had "a bearing on [the defendant's] liability or on the gravity of the offense?"  Nowhere does the instruction, unlike the language of Section 263 contemplates, speak to the need to weigh his actual awareness of the risk against the improbable actions of another actor, which unarguably contributed to the result.[21]

---

[19] *Id.* at 1048.
[20] *Id.*
[21] *Id.* at 1050.

We explained that § 263 "was designed for difficult cases . . . where a defendant contends that the actual result of his conduct is outside the risk of which he is aware."[22]  Hence, we stated that, under the facts in *Bullock*,

> the actual result should not be defined generally, as "death by collision" but more specifically, as a death which resulted in part from [the victim] disregarding a red light and by entering the intersection illegally (where [the defendant] had the right to be) and crossing [the defendant's] lane of travel as well as from [the defendant's] actions.[23]

Because the trial court's instructions to the jury "did not include the language of Section 263," we held that the court committed plain error when it "failed to provide the jury with the proper framework in which to assess whether under the facts . . . reckless causation *had not been established*."[24]  We reversed Bullock's convictions and remanded for a new trial.

(17)  As a threshold matter, Kibiro's invocation of § 263 is problematic without reference to *Bullock*.  Section 263 is not triggered at all unless the actual result is outside the risk of which the defendant was aware.[25]  And here "the probable result"—the risk of which he was aware—of his conduct (driving under the influence at a high rate of speed on a winding road, leaving his lane of travel) was identical to the actual result (death and physical injury) that occurred.  That said, his invocation of *Bullock* is equally unavailing.

---

[22] *Id.*
[23] *Id.*
[24] *Id.* at 1052 (emphasis in original).
[25] *See Wilcox v. State*, 2026 WL 322624, at *5 (Del. Feb. 6, 2026).

9

(18)  As mentioned earlier, the facts in Kibiro's case differ in significant respects from the facts in *Bullock*.  To start, unlike the other driver in *Bullock* whose negligence *per se* created an improbable risk that could potentially relieve criminal liability under § 263, Khalid's efforts to avoid Kibiro's reckless driving was a foreseeable risk of his conduct.  The jury heard testimony from Khalid that she tried to avoid colliding with Kibiro by engaging in defensive maneuvers, albeit unsuccessfully, which is distinguishable from the negligent conduct of the other driver in *Bullock*.  For the purpose of analyzing a break in causation under § 263, equating a driver who engages in defensive maneuvers to avoid a collision with one who runs a red light is untenable.

(19)  Additionally, Sgt. Jefferson testified that Kibiro caused the collision and "must have been in the opposite lane of travel" just before it occurred.[26]  He came to this conclusion after reviewing data from each vehicle and analyzing the roadway at issue.  Sgt. Jefferson's determination, moreover, stands in contrast to the testimony of the State's expert in *Bullock*, who concluded that the victim's entering of the intersection illegally was the "primary contributing circumstance" of the collision.  This fact, absent here, was at the heart of Bullock's appeal.

---

[26] App. to Answering Br. at B141; *id.* at B145 ("Q: Who caused the collision?  A: Mr. Kibiro.  Q: Anyone else?  A: No.").

(20) Considering this testimony and the alignment of the probable results of Kibiro's reckless driving and the result it actually caused, we conclude that the Superior Court did not err—much less plainly—by not providing a § 263 instruction to the jury.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be AFFIRMED.

BY THE COURT:

/s/ *Gary F. Traynor*
Justice

11